IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE: RANDY JAMES AND SARAH LEIGH PONCE, Debtors

No. 5:13-bk-70704
Ch. 7

OPINION AND ORDER

Before the Court are the chapter 7 trustee's objection to the debtors' claim of exemptions and a related motion for turnover of property, plus the debtors' responses to both pleadings. The Court heard the objection and motion on May 8, 2013. The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014. The Court has jurisdiction over these matters under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and they are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (E). For the reasons stated below, the Court sustains the trustee's objection to the debtors' claim of exemptions in part and denies the trustee's motion for turnover without prejudice to give the debtors the opportunity to amend their scheduled exemptions.

The debtors commenced their joint case when they filed their petition on February 28. By filing what is typically called a "joint petition," the debtors created a single case for administrative purposes, as allowed under § 302. *In re Beck*, 298 B.R. 616, 624 (Bankr. W.D. Mo. 2003). Even though the debtors filed a single petition, the joint case consists of two separate estates unless the court orders consolidation under § 301(b). *In re Toland*, 346 B.R. 444, 449 (Bankr. N.D. Ohio 2006); *see also In re Bunker*, 312 F.3d 145, 153 (4th Cir. 2002) ("Under joint administration the estate of each debtor remains separate and distinct."); *Carlson v. Moratzka* (*In re Carlson*), 394 B.R. 491, 493 (B.A.P. 8th Cir. 2008) ("the Bankruptcy Code views the two of them as separate debtors with separate estates."). In this instance, the Court has not ordered consolidation and the debtors are proceeding in their joint case as separate debtors with separate estates.

Entered On Docket: 05/23/2013

The debtors filed their voluntary chapter 7 petition and schedules on February 28, 2013. On March 28, 2013, the debtors filed amended Schedules B and C to correct the amount listed on those schedules for a 2012 tax refund. The debtors indicated on Schedule B that all of the property listed on Schedule B was joint property. The trustee's objection relates specifically to the following property that the debtors' listed on Schedule B and claimed exempt on Schedule C:

a. 66 Federal Credit Union account number 7538 - $6.17
b. 66 Federal Credit Union savings account - $25.00
c. 66 Federal Credit Union account number 3917 - $7,178.58
d. Office furnishings, decorations, supplies, etc. all located at Sonia's Tax Service - $5,210.00
e. Debtor's stock in Sonia's Tax Service - $1.00
f. 2007 Chevrolet Suburban - $17,035.00
g. 2006 BMW 325i - $9,651.00

The trustee alleges that this property was erroneously listed as joint property on the debtors' schedules when it is actually owned solely by Randy Ponce. The trustee has the burden of proving that the debtors did not properly claim their exemptions. Fed. R. Bankr. P. 4003(c).

The debtors argue that the property listed on Schedule B as joint property includes Sarah Ponce's equitable interests in that property as allowed under 11 U.S.C. § 541(a)(1). They also argue that because any interest Sarah would acquire in property as a result of divorce or property settlement may be included in her estate under § 541(a)(5), Sarah should also be entitled to exempt her interest in that property on the schedules. According to the debtors, all of the property listed on the debtors' schedules was acquired during the debtors' marriage. If the debtors were to divorce, under state law one-half of the property would belong to Sarah.[1]

---

[1] To memorialize the debtors' understanding of the ownership of the property, the debtors entered into a "Post-Nuptial Agreement" dated May 6, 2013, which states: "The parties agree that ALL property acquired during their marriage constitutes marital property, as identified in Arkansas Code Annotated § 9-12-315(b). More specifically, it is hereby agreed that both of the parties jointly own all property listed in schedule B of their bankruptcy petition, which was filed on February 28, 2013 . . . ."

2

The Court finds that the debtors' argument that Sarah Ponce should be entitled to exempt her interest in property that she would receive in the event the debtors obtained a divorce within 180 days of the filing of the petition is without merit. The debtors premise their argument on the fact that under state law, Sarah would be entitled to one-half of the marital property at the time a divorce decree is entered. Ark. Code Ann. § 9-12-315(a) (Repl. 2009). As stated earlier, that division amounts, in part, to the equitable interest the debtors argue that Sarah currently has in the property. To so find, the Court would be in contravention of established law in both Arkansas and within the Eighth Circuit. In 2007, the Arkansas Supreme Court said, "we have clearly stated that the law regarding marital property does not apply in situations other than divorce, including the settlement of estates." *Cloud v. Brandt*, 259 S.W.3d 439, 443 (Ark. 2007). The Bankruptcy Appellate Panel for the Eighth Circuit explained the reasoning behind not applying a state's marital dissolution laws to bankruptcy exemption laws, to wit:

> the marital dissolution statutes providing for a presumption of equal ownership in that context have different goals and policy rationales than the Bankruptcy Code does. Marital dissolution laws are intended to accomplish an equitable distribution of assets between spouses. The presumption of equal ownership comports with that purpose. In contrast, the bankruptcy scheme promotes an equitable distribution among debtor's creditors. Equitable issues as between co-debtor spouses are not relevant to this analysis.

*Carlson v. Moratzka* (*In re Carlson*), 394 B.R. 491, 495 (B.A.P. 8th Cir. 2008). The appellate panel was discussing Minnesota marital dissolution law, which expressly states that the distribution laws regarding marital property apply only in marital dissolution and child support proceedings. *See* Minn. Stat. Ann. § 518.003 (2008). This is similar to the Arkansas marital dissolution law, which states, "*For the purpose of this section*, 'marital

---

To the extent the Court recognizes the Post-Nuptial Agreement, it would have to consider the agreement a memorialization of a gift from Randy Ponce to Sarah Ponce rather than any sort of property settlement agreement. However, even then, the agreement would be of no consequence. Sarah's property of the estate is comprised of all legal or equitable interests of Sarah in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). The agreement was not entered into until May 6, 2013, more than two months after the commencement of the debtors' case.

3

property' means all property acquired by either spouse subsequent to the marriage . . . ." Ark. Code Ann. § 9-12-315(b) (emphasis added). The section to which the statute refers specifically addresses the division of property at the time a divorce decree is entered.

The pronouncement by the Arkansas Supreme Court and the rationale described in *In re Carlson* is typical. For instance,

- An Ohio bankruptcy court, referencing Ohio law, stated that marital property is determined when a marriage is terminated. Until then, the provisions are best viewed as a "contingent restraint on alienation, as opposed to actual 'interests' in property." *In re Toland*, 346 B.R. 444, 448-49 (Bankr. N.D. Ohio 2006). The court went on to recognize that the marital property provisions only become applicable during a divorce or separation proceeding. *Id.* at 449.
- North Carolina law provides a definition of marital property but "only for the limited purpose of specifying how courts are to distribute that property upon divorce." *In re Horstman*, 276 B.R. 80, 82-83 (Bankr. E.D.N.C. 2002).
- A bankruptcy court in Missouri, referencing Missouri law, stated that classification of property as "marital property" "is not sufficient to create an interest cognizable in bankruptcy for purposes of determining the validity of a claimed exemption." *In re Thorpe*, 251 B.R. 723, 725 (Bankr. W.D. Mo. 2000).
- Finally, a bankruptcy court in Tennessee recognized that "the [marital property] concept has no real meaning outside the realm of marital dissolution." *In re Hohenberg*, 174 B.R. 487, 493 (Bankr. W.D. Tenn. 1994).

In fact, the Court was not able to locate a single case that supported the debtors' equitable argument. Further, Arkansas common law clearly states that marital property does not apply in situations other than divorce, and the Bankruptcy Appellate Panel for the Eighth Circuit has explained that a state's marital dissolution laws and bankruptcy exemption laws have different goals and policy rationales. While the Court appreciates the debtors' equitable arguments, a bankruptcy court's equitable powers "may only be exercised in a manner which is consistent with the provisions of the Code." *Johnson v. First Nat'l Bank of Montevideo, Minn.*, 719 F.2d 270, 273 (8th Cir. 1983).

The code provides that the bankruptcy exemption statutes "shall apply separately with respect to each debtor in joint cases." 11 U.S.C. § 522(m). Because of this, the debtors can only claim the exemptions to which they would be entitled individually. *In re Carlson*, 394 B.R. at 493; *see also Butler v. Sharik* (*In re Sharik*), 41 B.R. 388, 390 (Bankr. E.D.N.C. 1984) ("Each of the joint estates is a separate entity, and the exemptions available to each codebtor may only be claimed from his or her separate estate."). The general rule concerning exemptions is that "courts should construe exemption statutes liberally in favor of the debtor." *In re Wallerstedt*, 930 F.2d 630, 631 (8th Cir. 1991); *see also Norwest Bank Nebraska, N.A. v. Tveten*, 848 F.2d 871, 875 (8th Cir. 1988). However, the exemptions can only be claimed to the extent the debtor has an ownership interest in the property. *In re Horstman*, 276 B.R. 80, 82 (Bankr. E.D.N.C. 2002) (citing cases). This must be an actual property interest and not a theoretical or potential interest. *Id.* (finding "marital property" statute in North Carolina was not applicable for determination of bankruptcy exemptions.). Simply stated, "[p]roperty interests are created and defined by state law. . . . [T]here is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. U.S.*, 440 U.S. 48, 55 (1979).

At the hearing on May 8, 2013, Randy Ponce testified that Sarah Ponce does not participate in his business, Sonia's Tax Service. According to Randy, he purchased the business from his mother in 2011 for $7500.00 with money that came out of the "family budget." Sarah also testified that she did not work in her husband's business. Based on the testimony of the debtors, the Court finds that the trustee has met her burden of proof; Randy Ponce has a property interest in the business that operates under the name of Sonia's Tax Service, but Sarah Ponce does not. Accordingly, Sarah is not entitled to claim an exemption in the 66 Federal Credit Union business account, which the debtors listed with a value of $7178.58; the office furnishings, decorations, and supplies that are located at Sonia's Tax Service, which the debtors listed with a value of $5210.00; and the stock in Sonia's Tax Service, which the debtors listed with a value of $1.00.

The only evidence presented to the Court that referenced the other two bank accounts were copies of statements from the 66 Federal Credit Union account ending in 7538, which the debtors listed with a value of $6.17. The statements were introduced by the trustee. Randy Ponce's name is the only name on the top of the statement. Without any evidence or testimony to prove (or even suggest) that Sarah Ponce has an ownership interest in the account, the Court finds that the trustee has met her burden of proof; Randy Ponce has a property interest in the account ending in 7538, but Sarah Ponce does not. Accordingly, Sarah is not entitled to claim an exemption in the 66 Federal Credit Union account ending in 7538, which the debtors listed with a value of $6.17. Because neither party introduced any evidence or testimony concerning the 66 Federal Credit Union savings account, the Court finds that the trustee failed to meet her burden of proof and that both Randy Ponce and Sarah Ponce have an ownership interest in the 66 Federal Credit Union savings account, which the debtors listed with a value of $25.00.

The remaining property consists of two vehicles: a 2007 Chevrolet Suburban, which the debtors listed with a value of $17,035.00, and a 2006 BMW 325i, which the debtors listed with a value of $9651.00. Only Randy Ponce's name appears on the Certificates of Title that were introduced by the trustee. Because Sarah Ponce's name does not appear on the certificates, the trustee argues that only Randy Ponce has an ownership interest in both vehicles. However, in Arkansas, certificate of title is only evidence of title to a vehicle, not title itself. *House v. Hodges*, 299 S.W.2d 201, 204 (Ark. 1957) (stating "certificate of title *is not title itself* but only *evidence of title*"); *see also Beatty v. USAA Cas. Ins. Co.*, 954 S.W.2d 250, 252-53 (Ark. 1997) ("Title indeed establishes a *prima facie* case of ownership; however, ultimate ownership is to be established by all evidence regarding property."). Sarah Ponce testified that the Suburban is used by her as the family car to transport the debtors' four children (triplets plus one) and that she drives it daily. It is the only car that has car seats for the children and it only has one key, which is in Sarah's possession. Although Randy Ponce admitted that he could have titled the vehicle in both names, the vehicle was financed in his name only so that he could obtain a better interest rate. Based on the testimony of the debtors, the Court finds that the

6

debtors have rebutted the prima facie case of Randy Ponce's sole ownership of the Suburban. As a result, with regard to the Suburban, the Court finds that the trustee failed to meet her burden of proof and both Randy Ponce and Sarah Ponce have an ownership interest in the Suburban, which the debtors listed with a value of $17,035.00. However, the debtors did not present sufficient evidence to rebut the presumption of Randy Ponce's sole ownership of the BMW that was established with the Certificate of Title. With regard to the BMW, the Court finds that the trustee has met her burden of proof; Randy Ponce has a property interest in the BMW, but Sarah Ponce does not. Accordingly, Sarah is not entitled to claim an exemption in the BMW, which the debtors listed with a value of $9651.00.

For the reasons stated above, the Court sustains the trustee's objection to the debtors' claim of exemptions for the following property:

> 66 Federal Credit Union account number 7538;
> 66 Federal Credit Union account number 3917;
> Office furnishings, decorations, supplies, etc. all located at Sonia's Tax Service;
> Debtor's stock on Sonia's Tax Service; and
> 2006 BMW 325i.

The Court overrules the trustee's objection to the debtors' claim of exemptions for the following property:

> 66 Federal Credit Union savings account
> 2007 Chevrolet Suburban

The Court denies the trustee's motion for turnover without prejudice; the debtors shall have 21 days to amend their exemptions to comport with this Opinion. If the debtors fail to amend their schedules as indicated, the Court will grant the trustee's motion for turnover.

IT IS SO ORDERED.

/s/ Ben Barry
Ben Barry
United States Bankruptcy Judge
Dated: 05/23/2013

cc: Jill R. Jacoway, chapter 7 trustee
R. Jeff Conner, attorney for the debtors
Richard Sforzini Jr., attorney for the U.S. Trustee